UNITED STATES DISTRICT COURT
District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>　　　Plaintiff, )<br>　　　versus )<br>　　　　　　　　　　　　　 )<br>Kaveh L. Afrasiabi, )<br>　　　Defendant. ) | Case No: 21-MJ-50 |

## DEFENDANT'S  AFFIDAVIT REGARDING (A) FAKE TELEPHONE CALL ATTRIBUTED TO HIM, (B) FAKE EMAILS ATTRIBUTED TO HIM

I, KAVEH L. AFRASIABI, Ph.D., say the following facts based on my personal knowledge under the pains and penalties of perjury.

1. I have a Ph.D. in political science and am a former professor at Boston University, Northeastern University, and Bentley University, as well as former researcher at Harvard University, UC Berkeley, and State University of New York at Binghamton. I am the author of numerous books and scholarly articles.
2. In 2007, I was told by the Iranian ambassador to UN that Iran like other countries can have two outside consultants under UN rules and whether or not I was interested to assist with the Permanent Mission of the Islamic Republic with their UN-related international affairs? I was promised that this was completely legitimate and I was asked to provide a set of finger prints, cori report, and copies of my green card and pages of my passport, required by UN, which in fact I did twice.  I was under the impression until my arrest on January 18, 2021 that my work was legal and transparent and I was not violating any US law.  I was certain the US government knows about my consulting role because I received checks from the Iran Mission's UN bank account, which for a long time I routinely deposited at my account at Chase Manhattan Bank, until the Bank closed all accounts for anyone connected to UN, and not just Iranians.
3. I also knew that the US government is fully aware of my consulting role because I assisted the family of FBI agent missing in Iran, Robert Levinson, and exchanged numerous communications with his daughter, Sarah Moriarty, who gave me the impression that she coordinated her efforts for the sake of her father with the FBI.  I also participated in several TV debates on Voice of America and went through security clearance at their headquarters in Washington, D.C., and New York, convincing me that they are fully aware of my transparent activity with the Iranian mission.
4. After my arrest I was in a state of shock and took me several days to finally focus on the complaint against me and I have discovered to my great shocking surprise that instead of citing any of my extensive publications, the complaint is riddled with purported emails from me, none of which is written by me.  For instance, I never wrote any email under the heading "revenge" and never urged Iran to "kick out the inspectors" and so on, nor the one regarding my Al-Jazeera appearance on the Lockerbie PanAM tragedy stating a comment on "soft diplomacy."  These are fabrications through and through and are completely foreign to the style and content of my writings as a Middle East expert.
5. I am also accused of leaving a telephone message for a US State Department employee for that person's latest take on the Iran nuclear issue, which I NEVER DID.  I strongly suspect that the timing

of that particular phone call coincides with the mysterious disappearance of my cell phone last year, which facts are as follows:

      (a) I went to the Post Office on Mount Auburn Street in Watertown and somehow my cell phone was lost and I was clueless and went to Sprint store in Watertown and purchased another phone. Approximately two days later when I returned to the same Post Office, I was informed by the same worker from the other day that a man had returned my phone and claimed that he had taken it by mistake (!) and that because of a Belmont address on the back of an envelope I had given him he had called the Belmont Police, who had come and picked up the phone. I then went to Belmont Police after calling them and picked up the phone. My housemates were fully aware of this matter.

      (b) There is little doubt in my mind that the perpetrators of this incident used my cell phone to place a call to a US State Department employee in order to smear and to criminalize me. Once the facts about the date of the purported call to the US State Department employee becomes public, then it is possible to ascertain this matter.


Kaveh L. Afrasiabi

Under the pains and penalty of perjury on this date, February 1, 2012.

Kaveh L. Afrasiabi