

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

DMP:ICR
F. #2015R01171

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 9, 2021

<u>By ECF and Email</u>

The Honorable Edward R. Korman
United States District Judge
Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Kaveh Lotfolah Afrasiabi
     <u>Criminal Docket No. 21-46 (ERK)</u>

Dear Judge Korman:

   The government respectfully submits this letter in advance of the hearing currently scheduled for February 10, 2021 at 2:30 p.m., at which the Court will consider, under <u>Faretta v. California</u>, 422 U.S. 806 (1975), defendant Kaveh Lotfolah Afrasiabi's January 28, 2021 motion to represent himself in the above-captioned matter (<u>see</u> Dkt. Nos. 8, 12, 13). This letter is also submitted in response to the defendant's February 6, 2021 <u>pro se</u> letter purporting to "reject" the appointment of standby counsel. (<u>See</u> Dkt. No. 22).

   The government takes no position on the defendant's self-representation motion, but as detailed below, requests that the Court ensure that before the defendant's motion is granted, the defendant understands the risks and disadvantages of self-representation, both generally and in this case in particular. Should the Court conclude that, despite these warnings, the defendant has knowingly and intelligently waived his right to counsel, the government respectfully requests that, notwithstanding the defendant's opposition, the Court appoint standby counsel who is qualified to obtain a national security clearance to act as the defendant's legal advisor during the pendency of this case.

   As discussed further below, appointment of cleared standby counsel is particularly appropriate in this case, which involves charges implicating the national security interests of the United States, and in which the government has already filed notice of its intent to offer into evidence, or otherwise use or disclose in any proceedings in the above-captioned matter, information obtained or derived from electronic surveillance and physical search

conducted pursuant to the Foreign Intelligence Surveillance Act of 1978 ("FISA"), as amended, 50 U.S.C. §§ 1801-1812 and 1821-1829. (See Dkt. No. 4).

I. Factual and Procedural Background

On January 18, 2021, the defendant was arrested at his home in Watertown, Massachusetts, pursuant to an arrest warrant issued on January 15, 2021, by the Honorable Lois Bloom, United States Magistrate Judge for the Eastern District of New York. Judge Bloom issued the arrest warrant based upon the 37-page complaint and affidavit of a special agent of the Federal Bureau of Investigation, which described evidence that the defendant has, since at least January 2007, worked in the United States as a paid agent of the government of the Islamic Republic of Iran, without registering with the Attorney General of the United States, as required by the Foreign Agents Registration Act ("FARA").

The defendant made his initial appearance before the Honorable Jennifer C. Boal, United States Magistrate Judge for the District of Massachusetts, in Boston on January 19, 2021. At his initial appearance, Judge Boal informed the defendant of his rights, as required by Rule 5 of the Federal Rules of Criminal Procedure, including his "right not to make a statement, and that any statement made may be used against the defendant." Fed. R. Crim. P. 5(d)(1)(E). Judge Boal then scheduled a detention hearing for January 22, 2021.

On January 22, 2021, Judge Boal released the defendant to home detention with location monitoring after the government and the defendant's retained counsel, Mr. William Keefe, Esq., reached agreement on a series of conditions of pretrial release that were intended to ensure that the defendant would appear as required during the pendency of this case. In addition to home detention with location monitoring, the defendant agreed to sign an unsecured bond in the amount of $250,000, to post $10,000 in cash bail, to obtain surety bonds in various amounts signed by members of his family, and he further agreed to the conditions of release that he have no contact with individuals known to him to be current or former officials of the Iranian government, nor with any potential witnesses or coconspirators.

On January 25, 2021, a grand jury sitting in the Eastern District of New York returned a two-count indictment charging the defendant with acting and conspiring to act as an agent of the Government of Iran without registration with the Attorney General of the United States, as required by FARA. The case was assigned to this Court. Following his indictment, the defendant began sending the government numerous email communications. On January 28, 2021, the defendant sent two emails to the government on the subject of self-representation, the first informing the government that "as of today" the defendant would represent himself, and a second email that the defendant asked the government to forward to Court staff. (See Dkt. No. 8 (second email)). On January 29, 2021, the Court issued a minute order indicating that the Court would address the defendant's pro se self-representation motion at the hearing scheduled for February 10, 2021.

The defendant thereafter continued to send emails to the government, the Court and others, including several emails attaching pro se motions. Among other things, on January 30, 2021, the defendant asked the government to "confirm that there is no financial restriction

2

on me and I have been informed by my attorney William Keefe that he has raised with you the issue of checks from UN and there is no legal bar in cashing them." The government responded by noting that the government could not provide the defendant legal advice and advised the defendant to speak with an attorney.

On January 31, 2021, the Court issued a Memorandum Opinion deferring consideration of any of the defendant's pro se motions until after the Faretta hearing on February 10, 2021. The Court advised the defendant that an attorney from the Federal Defenders of New York would be appointed to advise the defendant with respect to his decision to waive his right to counsel and to represent himself. Shortly thereafter, the defendant emailed the government and the Court a response to the Court's Order in which the defendant criticized the quality of representation he had received in past cases, declared his confidence that he would prevail in this matter, and announced his intention to use the criminal proceedings, not only to prevail in court, but also to "defend[] the honor and integrity of Defendant's wealth of writings that transcend Iran."

Since the Court's Order, the defendant has continued to file pro se motions, to make various factual representations to the government, and to request legal advice in numerous email communications. For example, on February 1, 2021, the defendant sent the government an email in which he stated he was "seriously considering the option of staging a hunger strike to protest the thinly-disguised abuse of my human rights." On February 2, 2021, the defendant sent the government an email with the subject line "correction," in which the defendant advised the government that the aggregate amount of payments that the Complaint alleged the defendant had received in the form of checks from the Permanent Mission of the Islamic Republic of Iran to the United Nations (the "IMUN") was wrong. The defendant stated that during certain time periods he had been paid by the IMUN in cash, and not by check. As another example, on February 6, 2021, the defendant sent the government and the Court an email attaching a pro se "Motion to Continue His Consulting Position With the Mission of the Islamic Republic of Iran" in which he admitted "his 13-year consulting role with the Islamic Republic of Iran" and admitted that he "counts on this role for his monthly sustenance as well as his important health insurance." (Dkt. No. 23).

On February 5, 2021, the Court's law clerk advised the defendant by email that the Court had appointed Ms. Deirdre D. von Dornum, Esq. of the Federal Defenders to serve as standby counsel to advise the defendant. The defendant promptly responded on February 6, 2021, with a pro se letter purporting to "reject[] the Court's offer of providing standby counsel to assist him in this instant action." (Dkt. No. 22). The defendant cited, among other reasons, the fact that the "Defendant has absolutely no respect for the opposition and its legal capability that could possibly result in a favorable outcome to them," the defendant's own confidence in his "proven legal expertise" and "keen knowledge of complex litigation," the defendant's concern for "multiple voices, second chair counsel, and dichotomous representation because of standby counsel," and his determination "to deliver a resounding and

3

humiliating defeat to the opposition as a pro se, defending his integrity before the jurors and the global public, without the slightest input by any assisting counsel." (Dkt. No. 22).

Also on February 6, 2021, the defendant sent an email to the government in which he again threatened to stage a hunger strike. Later that day the defendant emailed the government several legal questions he wished to send to the FARA Unit of the U.S. Department of Justice. The government responded by reiterating that it could not give the defendant legal advice, and referred the defendant to his Court-appointed standby counsel, Ms. von Dornum.

II.  Applicable Law

   A.  Waiver of the Right to Counsel and Limits on the Defendant's Right to Self-Representation

The Sixth Amendment "grants to the accused personally the right to make his defense" and therefore necessarily provides for a criminal defendant's right to self-representation. Faretta, 422 U.S. at 819. Before self-representation is appropriate, a criminal defendant must "knowingly and intelligently" forego the traditional benefits associated with the right to counsel. See Faretta, 422 U.S. at 835.

Whether a defendant's waiver of the right to counsel is "knowing and intelligent" depends upon the particular facts and circumstances of the case and characteristics of the defendant himself, including the defendant's conduct. United States v. Fore, 169 F.3d 104, 108 (2d Cir. 1999). In making this assessment, the Second Circuit has "rejected rigid waiver formulas or scripted procedures" and has "emphasized that 'knowing and intelligent' waivers depend on the totality of the circumstances." Dallio v. Spitzer, 343 F.3d 553, 563 (2d Cir. 2003) (internal citations omitted); United States v. Brown, 634 F. App'x 806, 808 (2d Cir. 2015) (the Court must look to the "totality of the circumstances," not "rigid waiver formulas or scripted procedures").

"Although there is no talismanic procedure to determine a valid waiver, the district court should engage the defendant in an on-the-record discussion to ensure that [he] fully understands the ramifications of [his] decision." United States v. Hausa, 922 F.3d 129, 134–35 (2d Cir.) (quotation marks omitted), cert. denied, 140 S. Ct. 208 (2019).

> From defendant's answers and from its own observations, the trial court must be persuaded that the waiver is a rational one, and that defendant has the mental capacity to comprehend the consequences of relinquishing a constitutional right. An accused must therefore have had the disadvantages of proceeding without counsel pointed out to [him] and must be shown to possess sufficient ability to understand the nature of the proceedings against [him].

4

United States v. Schmidt, 105 F.3d 82, 88 (2d Cir. 1997) (internal citations omitted). In considering whether the "totality of the circumstances" demonstrate that a defendant's decision to exercise his right of self-representation is knowing and intelligent, the Second Circuit has considered whether the defendant "understood that he had a choice between proceeding pro se [or] with assigned counsel," "understood the advantages of having one trained in the law to represent him," and "had the capacity to make an intelligent choice." United States v. Culbertson, 670 F.3d 183, 193 (2d Cir. 2012). Thus, although district courts in this Circuit commonly give them, "explicit warnings about the dangers and disadvantages of self-representation" are not "a minimum constitutional prerequisite to every valid waiver of the right to counsel." Dallio, 343 F.3d at 563. The overall record "must establish that a defendant knew what he [was] doing and his choice [was] made with eyes open." United States v. Hurtado, 47 F.3d 577, 583 (2d Cir. 1995) (internal quotation marks omitted).

"Even if a waiver of counsel is found to be knowing and intelligent, '[a] trial court may deny the right to act pro se where the defendant deliberately engages in serious and obstructionist misconduct, or is not able and willing to abide by rules of procedure and courtroom protocol.'" Hausa, 922 F.3d at 135 (quoting Clark v. Perez, 510 F.3d 382, 395 (2d Cir. 2008) (internal citations and quotation marks omitted)). "[A] judge may use willingness and ability to abide by courtroom protocol as prerequisites for accepting a defendant's waiver of his right to counsel." Davis v. Grant, 532 F.3d 132, 143 (2d Cir. 2008) (emphasis in original). The right to self-representation "is not a license to abuse the dignity of the courtroom." Clark, 510 F.3d at 395 (quoting Faretta, 422 U.S. at 834 n.46).

### B. The Court's Discretion to Appoint Standby Counsel Over the Defendant's Objection

While a defendant does not have a constitutional right to hybrid representation, see Schmidt, 105 F.3d at 90, Faretta approved the practice of appointing "even over objection by the accused . . . a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary," Faretta, 422 U.S. at 834 n.46. The Supreme Court later reiterated in McKaskle v. Wiggins that

> A defendant's Sixth Amendment rights are not violated when a trial judge appoints standby counsel—even over the defendant's objection—to relieve the judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals. Participation by counsel to steer a defendant through the basic procedures of trial is permissible even in the unlikely event that it somewhat undermines the pro se defendant's appearance of control over his own defense.

5

McKaskle v. Wiggins, 465 U.S. 168, 184 (1984). Indeed, although "a standby counsel's duties are considerably more limited than the obligations of retained or appointed counsel," Schmidt, 105 F.3d at 90, there is "no absolute bar on standby counsel's unsolicited participation" in a criminal case after the defendant has invoked the right of self-representation, McKaskle, 465 U.S. at 176. So long as the defendant retains "actual control over the case he chooses to present to the jury," and the "participation by standby counsel without the defendant's consent [does not] destroy the jury's perception that the defendant is representing himself," standby counsel may participate in the proceedings even over the defendant's objection. McKaskle, 465 U.S. at 178.

   III.   Discussion

      A.   Faretta Inquiry

The defendant has been charged with acting and conspiring to act as an agent of the government of the Islamic Republic of Iran, charges that implicate the national security interests of the United States. Moreover, the government has already filed notice of its intent to use information obtained or derived from electronic surveillance and physical search conducted pursuant to FISA. (See Dkt. No. 4). The government has determined that there is classified information related to this case that may be subject to disclosure in advance of trial under applicable rules, statutes and/or case law. Thus, during the course of this prosecution, it may be necessary to provide defense counsel with access to certain government documents and information which is classified at the "Confidential," "Secret," and perhaps "Top Secret" levels, and which may be subject to additional restrictions on handling and dissemination within those levels. Executive Order 13,526 sets forth the requirements for access to classified information and states that before such access is given, all persons must be cleared by the appropriate agency head or designee, and have a need-to-know. Exec. Order No. 13,526 § 4.1(a)(1) & (3), 75 Fed. Reg. 707 (Jan. 5, 2010). Unauthorized disclosure of classified information constitutes a violation of federal criminal law. See, e.g., 18 U.S.C. § 798 (prohibiting unauthorized disclosure of classified information).

If the defendant chooses to represent himself, the government will not be able to disclose classified information to the defendant in discovery. As an individual charged with acting as an agent of a foreign government, the defendant will not be eligible to obtain a national security clearance, and thus federal law would prohibit the disclosure of classified information to the defendant. Accordingly, the government requests that, in discussing with the defendant the disadvantages of self-representation, the Court inquire about the defendant's knowledge of the Classified Information Procedures Act and ensure the defendant understands that he will not be given personal access to any classified information disclosed in discovery.

Moreover, the defendant's statements in various email communications, described above, suggest that he views this prosecution as a vehicle to vindicate personal interests separate and apart from the question of his guilt of the charged crimes. Indeed, the defendant's stated goal of representing himself to "humiliat[e]" the government and his repeated threats to commence a hunger strike, suggest that the defendant may not understand

6

that, if he represents himself, he will be expected to comply with courtroom protocol and procedure throughout the proceedings. Accordingly, the government requests that the Court ensure that the defendant is aware that if he represents himself he will be expected to comply with courtroom protocol and procedure throughout the prosecution and trial.

Consistent with the foregoing, at the hearing the government respectfully asks the Court to pose the following questions to the defendant (in addition to any other questions the Court or standby counsel may wish to pose):[1]

1. You have a constitutional right to be represented by an attorney at every stage of this proceeding. Do you understand that?

2. Do you understand that, if you are unable to afford an attorney, the Court will appoint one on your behalf at no cost to you?

3. You also have a constitutional right to represent yourself, if you so choose. Do you wish to do so in this case?

4. Have you ever studied law?

5. Have you ever represented yourself in a criminal action?

6. Do you understand that you are charged with two crimes, conspiracy to act as an agent of the government of the Islamic Republic of Iran, and acting as an agent of the government of the Islamic Republic of Iran, in violation of the Foreign Agents Registration Act?

7. Do you understand that the maximum term of imprisonment as to each Count is five years?

8. Do you understand that if you are found guilty of both of these crimes the Court can order that the sentences be served consecutively, that is, one after another – meaning that the total term of imprisonment to which you may be sentenced is 10 years?

9. Do you understand that if you are found guilty of the crimes charged in the indictment the Court must impose a special assessment of $100 as to each Count?

---

[1] Adapted from Benchbook for U.S. District Court Judges (6th ed. 2013), at 5-7, available at https://www.fjc.gov/sites/default/files/2014/Benchbook-US-District-Judges-6TH-FJC-MAR-2013.pdf.

10. Do you understand that, at sentencing, the Court may impose a term of supervised release to follow any term of imprisonment and fines in the amount of up to $250,000 as to each Count?

11. Do you understand that, at sentencing, the Court may direct you to forfeit certain assets?

12. Do you understand that, because you are an alien, if you are found guilty of either of the charged crimes you will be subject to removal from the United States?

13. Do you understand that if you choose to represent yourself, you are on your own, and that I cannot tell you or even advise you how you should handle any aspect of your case?

14. Do you understand that any statements you make in the course of representing yourself may be used by the government against you, including at trial or in any future proceedings related to this case?

15. Are you familiar with the Federal Rules of Evidence?

16. Do you understand that the Rules of Evidence govern what evidence may or may not be introduced at trial, and that in representing yourself, you must abide by these very technical rules, and that they will not be relaxed for your benefit?

17. Are you familiar with the Federal Rules of Criminal Procedure?

18. Do you understand that those rules govern the way a criminal action is handled at trial, that you are bound by those rules, and that they will not be relaxed for your benefit?

19. Are you familiar with the Classified Information Procedures Act?

20. Do you understand that the Classified Information Procedures Act establishes certain procedures for the handling of classified information in criminal cases and is designed to protect and restrict the discovery of classified information, that any discovery of classified information will be governed by these procedures, and that they will not be relaxed for your benefit?

21. Do you understand that this case may involve the disclosure of classified information in discovery, and that you will not be permitted to personally review any classified information disclosed by the government because you are not eligible to receive a security clearance?

22. Do you understand that you will be expected to obey and follow the orders I issue during the course of this prosecution, and that you can be sanctioned for failing to comply with my rulings?

23. Do you understand that the right to self-representation is not a license to abuse the dignity of the courtroom, and that you will be expected to follow courtroom protocol and procedure?

24. Has anyone threatened you or forced you to make this request to represent yourself?

25. Now, in light of the penalties that you might suffer if you are found guilty, and in light of all of the difficulties of representing yourself, do you still desire to represent yourself and to give up your right to be represented by a lawyer?

26. Is your decision entirely voluntary?

If the answer to the two preceding questions is yes, the government requests that the Court make a finding on the record that the defendant has knowingly, intelligently and voluntarily waived his right to counsel:

27. I find that the defendant has knowingly, intelligently and voluntarily waived the right to counsel. I will therefore permit the defendant to represent himself.

B. The Need for Standby Counsel

If the Court determines that the defendant has knowingly and intelligently waived his right to counsel, the government respectfully submits that the Court should appoint cleared standby counsel to assist the defendant with this complex case, which will include voluminous unclassified discovery and may require the disclosure of classified discovery to cleared standby counsel. The government submits that the Court should appoint standby counsel even over the defendant's objection.

"Where a pro se defendant lacks the ability to defend himself adequately or vacillates in his resolve to continue without representation," the Second Circuit has held that "the judge can appoint stand-by counsel to assist the defendant in representing himself." Williams v. Bartlett, 44 F.3d 95, 100 (2d Cir. 1994). Whether to appoint standby counsel, and who to appoint, are matters of discretion for the district court. See United States v. Mills, 895 F.2d 897, 904 (2d Cir. 1990) (holding that a defendant is "not entitled to the appointment of a standby of his own choosing" and that the issue "was within the discretion of the [district] court"). District courts in this Circuit have exercised their discretion to appoint standby counsel to assist a defendant who seeks to represent himself in a complex case. See United States v. Little, No. 12-CR-00647 (ALC), 2014 WL 3604417, at *5 (S.D.N.Y. July 16, 2014) (finding that "complexities of the case warrant standby counsel" but rejecting defendant's

9

request to have his retained standby counsel appointed under the Criminal Justice Act); United States v. Teyibo, 877 F. Supp. 846, 853 (S.D.N.Y. 1995) (appointing standby counsel "in a case involving complex charges and serious penalties"), aff'd, 101 F.3d 681 (2d Cir. 1996).

Indeed, in prosecutions that involve, or may involve classified information, courts have regularly appointed standby counsel with national security clearances ("cleared standby counsel") to receive and review classified discovery that a defendant will not be permitted to review because the defendant cannot receive a security clearance. For example, in United States v. Moussaoui, 591 F.3d 263, 283 (4th Cir. 2010), in which Moussaoui was charged with terrorism offenses, the district court entered a protective order governing the disclosure of classified discovery which permitted the disclosure of classified information to cleared defense counsel, but permitted disclosure of classified information to Moussaoui only if the court determined such access was necessary. When Moussaoui thereafter chose to represent himself, the Fourth Circuit recognized that "[b]ecause of the complexity of the case, the district court opted to exercise its discretion to appoint standby counsel to assist the court and Moussaoui with these matters," namely classified discovery. Id.

The Moussaoui court's approach to balancing the defendant's right to self-representation against the need to prevent the unauthorized disclosure of classified information has been followed in a number of other cases. See, e.g., United States v. Subasic, No. 5:09-CR-216-FL-3, 2011 WL 1930628, at *1 (E.D.N.C. May 19, 2011) ("Although a defendant has a right to conduct his own defense, here principles of national security also come into play that do not permit defendant to have access to classified evidence without some further showing of necessity and without the assistance by standby counsel."). More recently, in United States v. Naseer, a case in this district in which a defendant charged with federal crimes of terrorism chose to represent himself, Judge Dearie appointed cleared standby counsel to review any classified discovery and conduct classified litigation on Naseer's behalf, while prohibiting the defendant from personally reviewing classified discovery. See United States v. Naseer, No. 10-CR-19 (RJD), 2014 WL 12909332, at *2 (E.D.N.Y. June 20, 2014) (granting government's motion to provide classified summary substitutions of material discoverable under 18 U.S.C. § 3500 and Giglio v. United States, 405 U.S. 150 (1972) to counsel while ordering that "[t]he classified summaries and the information they contain may not be shared with the defendant personally"); see United States v. Naseer, No. 10-CR-19 (RJD), Dkt. No. 369 (Jan. 7, 2015) (letter memorializing disclosure of classified discovery to standby counsel).

As detailed above, because the defendant is charged with acting as an agent of the government of the Islamic Republic of Iran, he will not be able to qualify for a national security clearance, and if it becomes necessary to do so, the government will be able to disclose classified information in discovery, if at all, only to cleared counsel. Accordingly, if the Court determines that the defendant has knowingly and intelligently waived his right to counsel, the

10

government respectfully submits that the Court should appoint cleared standby counsel to assist the defendant.

                    Respectfully submitted,

                    SETH D. DUCHARME  
                    Acting United States Attorney

By: _____  
      Ian C. Richardson  
      Assistant U.S. Attorney  
      (718) 254-6299

cc:    Kaveh Lotfolah Afrasiabi (defendant) (by Email)  
      Deirdre D. von Dornum, Esq. (standby counsel) (by Email)  
      Clerk of Court (ERK) (by ECF and Email)