

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

DMP:ICR
F. #2015R01171

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 1, 2021

By ECF and Email

The Honorable Edward R. Korman
United States District Judge
Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Kaveh Lotfolah Afrasiabi
                 Criminal Docket No. 21-46 (ERK)

Dear Judge Korman:

        The government respectfully submits this letter in response to the defendant's pro se motions to resume his consulting position with the Permanent Mission of the Islamic Republic of Iran to the United Nations (the "IMUN") (Dkt. No. 23) and for the return of property seized by the government pursuant to search warrant (Dkt. No. 38). For the reasons set forth below, the motions should be denied.

    I.    Factual and Procedural Background

        On January 18, 2021, the defendant was arrested at his home in Watertown, Massachusetts, pursuant to an arrest warrant issued on January 15, 2021, by the Honorable Lois Bloom, United States Magistrate Judge for the Eastern District of New York. Judge Bloom issued the arrest warrant based upon the 37-page complaint and affidavit of a special agent of the Federal Bureau of Investigation, which described evidence that the defendant has, since at least January 2007, worked in the United States as a paid agent of the Government of the Islamic Republic of Iran ("GOI"), without registering with the Attorney General of the United States, as required by the Foreign Agents Registration Act ("FARA"). (Dkt. No. 1).

        At the time of his arrest, special agents of the FBI executed a search warrant issued by U.S. Magistrate Judge Judith Dein of the District of Massachusetts at the defendant's residence, and seized several items belonging to the defendant, including digital storage media such as computers, CDs, DVDs, and a USB flash drive, as well as other items, including

videotapes, printed documents in both Farsi and English, several notebooks filled with handwriting in English and Farsi, as well as financial and identification documents.

On January 22, 2021, the defendant was released to home detention with location monitoring after the government and the defendant's retained counsel, Mr. William Keefe, Esq., reached agreement on a series of conditions of pretrial release that were intended to ensure that the defendant would appear as required during the pendency of this case. In relevant part, the defendant agreed to the condition of release that he have no contact with individuals known to him to be current or former officials of the Iranian government, nor with any potential witnesses or coconspirators.

A grand jury sitting in the Eastern District of New York returned a two-count indictment on January 25, 2021, charging the defendant with acting and conspiring to act as an agent of the GOI without registration with the Attorney General of the United States, as required by FARA. (Dkt. No. 6). The case was assigned to this Court. On February 10, 2021, the Court found that the defendant had knowingly and intentionally waived his right to counsel, permitted him to proceed pro se and entered a plea of not guilty to the charges. (Dkt. No. 36). The Court also adopted the conditions of pretrial release imposed in the District of Massachusetts, with a modification to permit the defendant to leave his home to go to the library and the gym. (Dkt. No. 34).

II.     The Defendant's Motion to Resume His Consulting Position with the IMUN

On February 6, 2021, the defendant sent the government and the Court an email attaching a pro se "Motion to Continue His Consulting Position With the Mission of the Islamic Republic of Iran" in which he admitted "his 13-year consulting role with the Islamic Republic of Iran" and admitted that he "counts on this role for his monthly sustenance as well as his important health insurance." (Dkt. No. 23). As the defendant has not registered as an agent of a foreign principal as required by FARA, the defendant in essence asks the Court to permit him to resume committing the crimes with which he is currently charged. The Court lacks the authority to permit the defendant to commit further crimes, and the motion should be denied.

As detailed at length in the criminal complaint, the defendant is charged with willfully acting within the United States as an unregistered agent of the GOI since at least 2007. The defendant's motion brazenly admits his employment as a consultant with the IMUN, and asks the Court to permit his employment relationship with the GOI to continue so that he can continue to receive the salary and healthcare benefits he received from the GOI for committing the charged crimes.

Among the many problems with the defendant's request are that he still has failed to register with the Attorney General as an agent of the GOI as required by FARA. Nor has the defendant notified the Attorney General that he will act as an agent of the GOI as required by 18 U.S.C. § 951. Thus, by continuing his employment with the GOI, the defendant would commit new federal crimes and create additional evidence of the ones he is already charged with. The defendant's commission of new criminal conduct would not only subject him to further punishment for the new offenses, but also to a mandatory additional term of

imprisonment that would run consecutive to any other sentence of imprisonment for having committed the crime while on pretrial release. See 18 U.S.C. § 3147.

Moreover, the defendant's stated reason for pursuing continued employment with the GOI is to earn a living and maintain his employee health benefits, but the proceeds of a violation of FARA are subject to forfeiture, and the indictment includes a forfeiture allegation. Any compensation the defendant might earn from continuing to act as an unregistered agent of the GOI would be forfeitable and could be seized by the government.

Finally, the defendant's conditions of pretrial release prohibit him from having contact with current or former officials of the GOI except in the presence of his standby counsel. (See Dkt No. 34). Authorizing the defendant to continue his employment with the GOI would require the Court to modify his conditions of release to permit the defendant to have unrestricted contact with GOI officials on whose behalf he acted, and who possess the unique resources and incentives of a foreign government to assist the defendant in avoiding a trial at which their roles in the defendant's criminal conduct will be publicly exposed. Permitting the defendant to have unrestricted contact with officials of the GOI would thus create an unacceptable risk that the defendant could arrange with them to flee this prosecution.

In sum, the defendant's motion to resume his employment with the GOI should be denied because it would be unlawful, ineffective at generating the compensation he claims he needs, and unwise in view of the serious opportunity to flee that such an arrangement would create. Any one of these reasons is sufficient basis to deny the defendant's motion.

III.   The Defendant's Motion for Return of His Property

A. The Defendant's Motion

On February 12, 2021, the defendant sent the government and the Court an email attaching his pro se "Motion to Compel the Production of His Personal Property and for a Hearing." (Dkt. No. 38). In his motion, the defendant moves the Court "to order the Government to produce his personal property seized from his home on January 18, 2021, except the electronic material, which the Defendant understands the Government intends to keep as potential evidentiary material." Id. at 1. The defendant further clarifies however, that he seeks return of "the various USBs and the lap top which he needs in order to complete his book project," as well as "a dozen long hand-written post card stories; manuscript on the chronology of human rights abuses of Afrasiabi, 70 plus pages of children stories (Adventures of Blue Boy), Farsi poetry book manuscript, the New Garden; DVD of Mr. Mike Wallace's deposition testimony from 20 years ago." Id.

B. Discussion

The defendant's motion should be denied because the government is today making available to the defendant copies of most of the items he has requested, and, in any event, because he cannot satisfy the requirements for a motion for the return of property under Federal Rule of Criminal Procedure 41(g).

3

1. <u>Copies of the Requested Materials Pursuant to Rule 16(a)(1)(E)(iii)</u>

On February 11, before the defendant made his motion, the government responded to the defendant's email request for the return of certain seized items by noting that the government was still processing and reviewing the materials seized from his home, including electronic storage media and foreign language materials, to assess their evidentiary value and would return items if and when the government determined that the items lacked evidentiary value. The government noted that while it would not be able to return items of evidentiary value unless the defendant stipulated to the authenticity and admissibility of the government's copies, the defendant is entitled, pursuant to Rule 16 of the Federal Rules of Criminal Procedure, to copies of any "books, papers, documents, data, photographs, tangible objects, . . . or copies or portions of any of these items" that are "within the government's possession, custody, or control" that were "obtained from or belong[] to the defendant." Fed. R. Crim. P. 16(a)(1)(E)(iii). The government assured the defendant that, pursuant to its discovery obligations, it would provide such copies to the defendant in the most readily accessible electronic format possessed by the government, but the government advised him that making such copies would take time. The defendant filed his motion seeking to compel the production of the seized property the next day.

Since that exchange two weeks ago, the government has scanned into PDF format the documents seized from the defendant, including for example identification cards, notebooks, photographs and printed documents, and is making these files available to the defendant to download from an encrypted file sharing system used by the U.S. Attorney's Office. The government is also making available to the defendant through the same file transfer system the contents of the USB flash drive and the CDs seized from the defendant's residence.

The storage capacity of the defendant's two laptops and phone, however, is voluminous, and it will take longer to make copies of those materials and to provide them to the defendant. Because of their size, the government will provide forensic images of those devices to the defendant on a portable hard drive when the copies are available.

2. <u>Motion for Return of Seized Property Under Rule 41(g)</u>

The defendant's motion does not identify the rule under which he seeks relief, but to the extent he seeks the return of property seized pursuant to a search warrant, his motion is governed by Federal Rule of Criminal Procedure 41(g). Rule 41(g) provides that:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g).  Because the defendant's property was seized in the District of Massachusetts, a Rule 41(g) motion is properly brought in that court, not in this one.  But even if this Court was the correct venue for his motion, the defendant's motion would fail because he cannot show that the property was illegally seized or that the government's need for the property as evidence has ended.

"District courts in this Circuit have applied a three-part test that a moving party must demonstrate in order to prevail on a Rule 41(g) motion: '(1) [the party] is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the government's need for the property as evidence has ended.'" United States v. Morgan, 443 F. Supp. 3d 405, 407 (W.D.N.Y. 2020) (quoting United States v. Pinto-Thomaz, 352 F. Supp. 3d 287, 311 (S.D.N.Y. 2018); see Ferreira v. United States, 354 F. Supp. 2d 406, 409 (S.D.N.Y. 2005).

The defendant claims that the government has refused his request for the seized materials, and that he "was never shown a copy of the search warrant as is required by law and is clueless as to its purview and scope." (Dkt. No. 38 at 1).  He further claims that the seized items "cannot be possibly said to be relevant to the facts of the instant case and simply relate to Afrasiabi's works in progress aimed at publication and, therefore, should be returned to him." Id.

These claims are wrong.  First, as noted above, and contrary to his claim that the government simply refused his request, the government assured the defendant that it would provide him copies in discovery of all of the materials seized from his residence.  As noted above, the government has today provided copies of a significant number of the materials he identifies in his motion.  The defendant's claim that the government failed to provide a copy of the search warrant is also wrong.  Special agents of the FBI executed the search of the defendant's residence following the defendant's arrest, while the defendant was being interviewed and processed at a law enforcement facility.  At the conclusion of the search, and as required by law, the executing agents left a copy of the search warrant and its attachments on the dining room table at his residence, together with a receipt for seized property signed by one of the defendant's housemates.  See Fed. R. Crim. P. 41(f)(1)(C).  For good measure, the agents photographed the search warrant, its attachments, and the signed property receipt on the dining room table before they departed.

The defendant is also wrong to speculate that the search warrant did not authorize the seizure and review of the materials listed in his motion, including electronic storage media, lengthy handwritten notebooks and foreign language documents because they "simply relate to Afrasiabi's works in progress aimed at publication" and not issues involved in this case. (Dkt. No. 38 at 1).  The search warrant broadly authorized the search and seizure of evidence of the crimes charged in the indictment, as well as other related offenses listed in the search warrant.  As alleged in the complaint and in the indictment, the defendant was employed by the GOI, in part, to publish material that promoted the GOI's views.  For example, the complaint discusses the defendant's emails to GOI officials about the importance of his continuing employment and compensation by the GOI to the completion of the same book that

5

the defendant claims he requires the return of the seized items to finish.  See Complaint ¶ 90, Dkt. No. 1 ("On or about July 16, 2020, AFRASIABI sent another email to the Foreign Minister attaching his most recent book proposal, writing "ba salam, attached please see the book contract for our next book that, unfortunately, there is no way I can finish if the support is ended in this horrible  pandemic environment. Please make sure there is no interruption in my works.").

Consistent with applicable law, the government intends to retain items that were lawfully seized and that have evidentiary value in connection with its investigation and prosecution of the defendant.  The FBI has determined that some of the materials seized from the defendant's residence do not have evidentiary value.  Some of those items are nevertheless contraband and cannot be returned.  The government will discuss these matters with the defendant and will arrange with him to return non-contraband items that the government has determined do not have evidentiary value.

Finally, the government notes that the FBI is still reviewing certain materials seized from the defendant's residence, and in some cases that review requires the assistance of personnel who can read and translate material in foreign languages.  If upon more detailed review the government determines that any of the seized items do not have evidentiary value, the government will return them.

Accordingly, the defendant's motion for the return of property should be denied.

Respectfully submitted,

SETH D. DuCHARME
Acting United States Attorney

By:   /s/Ian C. Richardson
Ian C. Richardson
Assistant U.S. Attorney
(718) 254-6299

cc:   Kaveh Lotfolah Afrasiabi (defendant) (by Email)
Deirdre D. von Dornum, Esq. (standby counsel) (by Email)
Clerk of Court (ERK) (by ECF and Email)