UNITED STATES  DISTRICT  COURT
District of  New York

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>    Plaintiff, )<br>    versus )<br>     )<br>Kaveh L. Afrasiabi, )<br>    Defendant. ) | Case No: 21-MJ-50 |

## DEFENDANT'S AFFIDAVIT IN SUPPORT OF HIS MOTION TO CONTINUE HIS CONSULTING ROLE WITH THE MISSION OF ISLAMIC REPUBLIC OF IRAN TO UN

I, Kaveh L. Afrasiabi, Ph.D., say the following facts based on my personal knowledge under the pains and penalties of perjury:

1. I have been working as international affairs consultant to the Permanent Mission of Islamic Republic of Iran to UN (Mission) since 2007; this was a part-time job that provided $3000.00 a month salary that was never raised, plus health insurance.
2. I was repeatedly assured by the Iranian officials at the Mission that my work was legal and every country including Iran was allowed under the UN rules to hire two outside consultants.
3. I repeatedly submitted my documents, i.e., pages of my passport and green card, as well as cori reports, to the Mission, which asked for them in order to submit to UN;
4. During 2007-2013, I repeatedly solicited information about Iran's foreign affairs from the various Iranian officials at the Mission, as part of my country expertise on Iran;
5. I repeatedly interviewed various Iranian ambassadors and foreign ministers – Kharazi, Mottaki, Salehi, Khazai, Zarif – for various news agencies such as Asia Times, as well as for my books, such as the interview with ambassador Khazai for UN Chronicle and the book, UN Management Reform, and interviews with Foreign Minister Zarif for my recent academic books on the nuclear issue and Trump and Iran.
6. During 2007-2021, I repeatedly provided foreign policy advice, on such issues as Iran's nuclear issues, regional policies, and US-Iran relations. I never wrote any book or article at the instruction of Iran Mission, nor did I ever waiver from my own independent standards in my publications.  At times, my writings were at variance with Iran's positions, such as on the tendency to exit from the NPT, military retaliation, the war in Karabakh, situation of women, etc.  I supported the Iran nuclear agreement and I was critical of the Trump administration for scuttling a legally-binding deal unilaterally.
7. After the US assassination of Iranian general Soleimani, I repeatedly communicated to Iran's foreign minister and Iran's ambassador to UN urging "caution," "heroic restraint" with respect to military retaliation, and "rule abiding behavior" by complaining to UN Security Council.  I did not write the email under the heading "revenge."
8. I repeatedly used my consulting role with Iran in order to lobby the Iranian government on behalf of various (US) prisoners in Iran, including the three American hikers, FBI agent Levinson, and Wilson Scholar, Esfandiari.

9. I also used my rapport with the Iranian authorities due to the consulting role to promote US-Iran cooperation on areas of mutual interest, such as an "incident at sea" agreement, in collaboration with the former US Secretary of Defense, Ashton Carter.

10. I never once discussed the Foreign Agent Registration Act with any official at the Mission, nor had I even read that Act prior to my arrest on January 18, 2021. I was only vaguely aware of it and had mistaken it for the foreign lobbying act and, since I steered clear of US domestic politics and did not engage in lobbying efforts, I did not consider it relevant to my work.

11. There is not even one single evidence that I ever tried to hide my consulting role with the Mission, which explains my numerous phone calls and dozens of emails with various Iranian officials at UN regarding the payment of my monthly income over the years.

12. During 2007-2021, I engaged in a number of high-profile activities such as participating in US-Iran Track II Diplomacy and in TV debates on the US-owned Voice of America, as well as lobbying Iran for the FBI agent missing in Iran, Levinson, and taking part in exclusive meetings with various Iranian presidents visiting the US, that naturally I took it for granted that the US was fully aware of my relationship with the Mission.

13. On the day of my arrest by FBI, January 18, 2021, two FBI agents questioned me and admitted they knew of my consulting connection with the Mission for "many many years."

14. I rely on the income and the health insurance from my contractual relationship with the Mission, which has been interrupted due to my arrest and present house arrest by US government. It is unfair for the government to place me at house arrest and deprive me of my legitimate work sanctioned by the UN and expect me to survive while I also carry the burden of self-representation in the instant criminal case.

15. I am prepared to register under the FARA Act and submit to the limitations proposed in my response to the government's response to my pending motion aforementioned if the court permits me to resume my work with the Mission. I am and have been an agent of peace committed to US-Iran reconciliation and peace and dialogue.

Respectfully Submitted,

Kaveh L. Afrasiabi, Pro Se


This affidavit has been presented under the pains and penalties of perjury

Kaveh L. Afrasiabi