

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

DMP:ICR/SKW
F. #2015R01171

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 9, 2021

By ECF and Email

The Honorable Edward R. Korman
United States District Judge
Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Kaveh Lotfolah Afrasiabi
                Criminal Docket No. 21-46 (ERK)

Dear Judge Korman:

      For the reasons below, and pursuant to Federal Rule of Criminal Procedure 16(d), the government respectfully requests that the Court enter the proposed Protective Order attached to this motion, which imposes restrictions on the use and dissemination of materials and information disclosed by the government to the defendant pursuant to the government's obligations under Rule 16, 18 U.S.C. § 3500, Rule 26.2 of the Federal Rules of Criminal Procedure and pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972).

I.     Background

      On January 25, 2021, a grand jury sitting in the Eastern District of New York returned an indictment charging the defendant with conspiring to act as an unregistered agent of the Islamic Republic of Iran, in violation of Title 18, United States Code, Section 371, and acting as an unregistered agent of the Islamic Republic of Iran, in violation of Title 22, United States Code, Sections 612 and 618(a)(1). See ECF 6.

      As described in the charging documents, between January 2007 and January 2021, the defendant was employed by the Mission of the Islamic Republic of Iran to the United Nations. Pursuant to his employment by the Iranian government, the defendant repeatedly lobbied high-ranking United States government officials for policies favorable to the Iranian government. The defendant also made television appearances and authored articles and opinion pieces advocating for the Iranian government's position on various foreign policy

matters. For these services that the defendant performed, the defendant received a salary and health insurance benefits from the Iranian government.

Despite being fully aware of the registration requirements, the defendant never registered as a foreign agent as required by the Foreign Agents Registration Act ("FARA"). Rather, the defendant took steps to conceal that he was an employee of the Iranian government and hide that the Iranian government was a substantial source of his income.

II.     The Discovery

As part of its investigation into the defendant, the government obtained communications and records from third parties and government agencies, collected records and other information through physical surveillance and inspections, served search warrants on electronic communications service providers, and has executed search warrants on physical premises, resulting in the seizure of paper and electronic records relevant to the above-captioned case. The government has thus far provided the defendant with a substantial amount of this discovery, without a protective order. The government anticipates that its additional discovery will include several broad categories of materials, including the following:

- Communications, including email, text messages and recorded phone calls, involving the defendant;

- Medical and financial records of the defendant and uncharged third-parties;

- Records and communications of various agencies of the United States Government;

- Law enforcement records relating to the government's efforts to investigate the defendant's activities.

These broad categories of discovery implicate a number of different interests that should be protected. For example, the medical insurance records and payroll records of uncharged individuals include sensitive personal information, such as those individuals' addresses, phone numbers, familial information, salaries, and banking information. The U.S. government and law enforcement records may reveal information about the use of sensitive law enforcement investigative techniques to detect the charged conduct, which if widely disclosed, could compromise their use in future investigations. Moreover, the discovery will include information related to additional uncharged criminal activity of the defendant and other uncharged third parties.

III.    Legal Standard

This Court has the authority under Federal Rule of Criminal Procedure 16(d) to issue a protective order restricting the dissemination of discovery for good cause. See Fed.

2

R. Crim. P. 16(d)(1) ("At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."); United States v. Stewart, 590 F.3d 93, 98-99 (2d Cir. 2009) (citing Fed. R. Crim. P. 16(d)); In re: Terrorist Bombings of U.S. Embassies in E. Afr., 552 F.3d 93, 122 (2d Cir. 2008) (noting that Rule 16(d) grants district courts the discretion to establish conditions "under which the defense may obtain access to discoverable information"); United States v. Smith, 985 F. Supp. 2d 506, 521 (S.D.N.Y. 2013) (noting that "the Supreme Court has held that the trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of materials which they may be entitled to inspect").

By its own terms, Rule 16 contemplates that discovery materials should be exchanged privately between the parties and not disclosed publicly. See Seattle Times Company v. Rhinehart, 467 U.S. 20, 31-33 (1984) (noting that pretrial civil discovery materials are not traditionally available to the public); United States v. Anderson, 799 F.2d 1438, 1441 (11th Cir. 1986) (holding the same in the context of criminal discovery); Smith, 985 F. Supp. 2d at 519 (noting that pretrial discovery "is usually conducted in private"). Because the purpose of pretrial discovery is solely to prepare a defense, discovery materials provided by one party or another should not be disseminated before trial to members of the public. See Anderson, 799 F.2d at 1441 ("Discovery, whether civil or criminal, is essentially a private process because the litigants and courts assume that the sole purpose of discovery is to assist trial preparation. That is why parties regularly agree, and courts often order, that discovery information will remain private."); United States v. McVeigh, 918 F. Supp. 1452, 1460 (W.D. Okla. 1996) (limitations on public disclosure of discovery information "assure the fairness of the proceedings" and "emphasize that trials are conducted inside the courtroom . . . rather than on the courthouse steps").

For these reasons, courts in this Circuit and others have held that it is appropriate to issue a protective order limiting the dissemination of discovery materials solely to the defendant for his use in preparing a defense for trial. See, e.g., Seattle Times, 467 U.S. at 37 (affirming protective order limiting dissemination of pretrial discovery); Stewart, 590 F.3d at 98-99 (same); Anderson, 799 F.2d at 1441 (same); Smith, 985 F. Supp. 2d at 535 (same); United States v. Salemme, 978 F. Supp. 386, 389-90 (D. Mass. 1997) (same).

In fact, recently, in United States v. Al Malik Alshahhi et al., No. 21-CR-371 (E.D.N.Y.), which charged defendants Thomas Barrack, Matthew Grimes, and Rashid Sultan Rashid Al Malik Alshahhi with acting as agents of a foreign government without prior notification to the Attorney General, the Honorable Brian M. Cogan entered a similar protective order as the one proposed in this case. See ECF No. 27.

IV.   The Proposed Protective Order

The proposed Protective Order balances the varied privacy and security interests of the government and of uncharged third parties against the defendant's need to investigate the charges against him and to prepare a defense by restricting the disclosure of discovery to individuals with a specific need to review the discovery. The Protective Order permits the defendant and standby counsel to share discovery materials with defense staff, including expert

witnesses and litigation consultants, and establishes a process for the defendant and standby counsel to obtain authorization, either from the government or the Court, to share discovery with others if there is a need to do so. The Protective Order similarly establishes a process for the defendant and standby counsel to be able to use and refer to the discovery material in litigation without compromising the interests that the Protective Order is intended to protect.

At the same time, the Protective Order requires the defendant and standby counsel to ensure that each person to whom they provide discovery material is advised of the terms of the Protective Order and agrees to be bound by them, and takes care to safeguard the discovery material that is disclosed to them. The Protective Order also balances the defendant's needs to protect defense strategy with the government's need to ensure accountability for the handling of discovery material by requiring the defendant and standby counsel to retain the copies of Attachment A to the Protective Order that are signed and dated by the authorized recipients to whom the defendant and standby counsel disclose discovery material, and to return the discovery material and provide the signed copies of Attachment A to the government at the conclusion of the litigation, or earlier, if so ordered by the Court.

Finally, the Protective Order allows the government to designate particularly sensitive discovery material as "Sensitive Discovery Material" which is subject to greater restrictions on its use and dissemination. This category is necessary to ensure that confidential medical and personal information of uncharged third parties, as well as information that may reveal sensitive government investigative techniques, is not misused or disseminated. While normally a defendant would be able to view this category of discovery only in the presence of his attorney, as is the case in the protective order entered by Judge Cogan in United States v. Alshahhi, given the defendant's pro se status, other arrangements are necessary to protect his right to represent himself. To that end, the government and the defendant's standby counsel, Deirdre von Dornum, Esq., arranged for the defendant to be able to view this category of discovery at the office of the Federal Defenders of Massachusetts, New Hampshire, and Rhode Island ("Federal Defenders of Massachusetts"). Ms. Von Dornum further obtained a computer for the defendant to use at the Federal Defenders of Massachusetts to the view the Sensitive Discovery Material. These arrangements permit the defendant to review the Sensitive Discovery Material while addressing the government's concerns over the handling of such material.

V.      The Defendant's Positions on the Proposed Protective Order

The government provided draft copies of the Protective Order to the defendant and Ms. von Dornum, and had numerous conversations with them regarding their comments and views on the Protective Order. In response to those discussions, the government made the only specific change that the defendant requested—which was to clarify that the Protective Order applies only to future government disclosures, and does not apply retroactively. As noted above, Ms. von Dornum coordinated with the Federal Defenders of Massachusetts to ensure that the defendant has an office and computer available so he may view the Sensitive Discovery Material in a secure setting.

4

Notwithstanding the fact that the defendant failed to raise any additional edits to the Protective Order, the defendant informed the government that he opposes its entry and intends to file a pro se opposition. The government understands that the defendant's main concern is his fear that someone will hack into his e-mail, intentionally leak the discovery material, and cause the defendant to be in contempt of a court order. In order to address the defendant's concerns, the government recommended that the defendant use a different e-mail account other than the account that he has concerns about. The government also recommended that the defendant could review the Discovery Material from an external drive while the laptop was in airplane mode and not connected to the internet. In addition, the government and Ms. von Dornum proposed that the government send all future productions to Ms. von Dornum in the first instance. Then, Ms. von Donrnum and the defendant could go over the Discovery Material together and decide which productions the defendant felt comfortable reviewing on his computer. The defendant seems to have rejected those options.

Because that the defendant has declined to enter into the proposed Protective Order, the government now respectfully requests that the Court grant the government's application and enter the Protective Order over the defendant's objection.

VI. Conclusion

Given the sensitive nature of the discovery in this case and the potential harm to third parties that would result from its uncontrolled disclosure to those without a legitimate need to review the discovery, the government respectfully requests that the Court enter the Protective Order.

Respectfully submitted,

JACQUELYN M. KASULIS
Acting United States Attorney

By: /s/
Ian C. Richardson
Sara K. Winik
Assistant U.S. Attorneys
(718) 254-7000

cc: Kaveh Lotfolah Afrasiabi (defendant) (by Email)
Deirdre D. von Dornum, Esq. (standby counsel) (by Email)
Clerk of Court (ERK) (by ECF and Email)